IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **VERSUS EVIL LLC,** | * | |
| Plaintiff, | * | |
| | | Civil Action No. RDB-20-0001 |
| v. | * | |
| **PNC BANK, NATIONAL ASSOCIATION,** | * | |
| | * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Versus Evil LLC ("Plaintiff" or "Versus Evil") brings this action against Defendant PNC Bank, National Association ("Defendant" or "PNC"), alleging failure to exercise ordinary care pursuant to Section 3-404 of the Commercial Law Article of the Maryland Annotated Code of Maryland ("UCC")[1] (Count I) and common-law negligence (Count II). Presently pending are Defendant's Motion to Transfer Venue (ECF No. 9) and Defendant's Motion to Dismiss (ECF No. 8). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant's Motion to Transfer Venue (ECF No. 9) shall be DENIED, and Defendant's Motion to Dismiss (ECF No. 8) shall be GRANTED IN PART and DENIED IN PART. Specifically, as Plaintiff has sufficiently stated a claim in Count I under the UCC, the common-law negligence claim (Count II) is DISMISSED.

---

[1] The Maryland General Assembly adopted Article 3 from the Uniform Commercial Code and codified it at Title 3 of the Commercial Law Article of the Maryland Code. *See* Md. Code Ann., Com. Law § 3-101.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Plaintiff is an independent video game publisher that helps independent video game developers be financially and creatively successful in the video game market. (Compl. ¶ 7, ECF No. 2.) It is a Delaware limited liability company with its principal place of business in Baltimore County, Maryland. (*Id.* ¶ 3.) Non-party Steven Escalante is the manager of Versus Evil. (*Id.*) Defendant PNC is a national association registered to do business in Maryland, with its principal place of business in Pittsburgh, Pennsylvania. (*Id.* ¶ 4.) Plaintiff is a customer of Defendant PNC pursuant to a 2013 Treasury Management Services Agreement and an Account Agreement, among other agreements. (*Id.* ¶ 8.)

Plaintiff alleges that one of the services provided by PNC is a business checking account ("Checking Account"), for which Mr. Escalante is the signatory. (*Id.* ¶ 9.) Plaintiff further alleges that PNC owes Plaintiff certain obligations and duties with respect to the Checking Account, including the obligation to charge Plaintiff's Checking Account for items, such as checks, only if the items are "properly payable," or "authorized by the customer and in accordance with any agreement between the customer and bank." (*Id.* ¶¶ 10-11.)

On or about February 25, 2019, Plaintiff alleges that "an unknown person or persons" created a fake check drawn on the Checking Account in the amount of $4,770.97, with Mr. Escalante's forged signature. (*Id.* ¶ 12; *see also* Checks, ECF No. 2-1.) This February check was payable to "Joyce M. Ellis," whom Plaintiff alleges is unknown to Plaintiff and Mr. Escalante. (*Id.* ¶ 13.) Plaintiff alleges that "a person or persons" obtained a real check from the Checking Account with a "dog ear" wrinkle or fold, photographed or scanned it, digitally created the February 25, 2019 check from those images, and deposited the check using a mobile phone deposit system. (*Id.* ¶¶ 13-14.) PNC allegedly honored the mobile deposit and deducted $4,770.97 from Plaintiff's Checking Account and remitted it to "the person or persons who forged the instrument." (*Id.* ¶ 15.)

After the February check cleared, the same person or persons allegedly created similar forged instruments, bearing the same "dog ear" corner and Mr. Escalante's forged signature. (*Id.* ¶¶ 16, 20.) The additional checks were deposited between March 6, 2019 and March 12, 2019, totaling an additional $188,569.58 in deductions from Plaintiff's Checking Account. (*Id.*; *see also* Checks, ECF No. 2-1.) The checks were made payable to various payees whom Plaintiff alleges are not known to either Plaintiff or Mr. Escalante. (*Id.* ¶ 18.) Plaintiff alleges that none of the subject checks were authorized by Plaintiff, none of the payees provided goods or services to Plaintiff, and none of the payees were owed money by Plaintiff. (*Id.* ¶¶ 18-19.)

Plaintiff alleges that Mr. Escalante promptly contacted PNC on behalf of Plaintiff to inform PNC that the checks were forgeries, that Plaintiff did not authorize any of the checks, and that PNC must dishonor the checks and reimburse Plaintiff for their full amounts. (*Id.* ¶ 22.) On or about April 11, 2019, a PNC representative allegedly emailed Mr. Escalante to tell

3

him that the matter was being investigated.  (*Id.* ¶ 23.)  Plaintiff alleges that, to date, PNC has failed to respond to Mr. Escalante's repeated phone calls and emails and that PNC has failed to dishonor the checks or reimburse Plaintiff for their full amounts.  (*Id.* ¶¶ 24-25.)

Plaintiff originally brought this action against PNC in the Circuit Court for Baltimore County on November 21, 2019, asserting one count of failure to exercise ordinary care pursuant to Section 3-404 of the Maryland UCC (Count I) and one count of common-law negligence (Count II).   (Compl. ¶¶ 27-36, ECF No. 2; Notice of Removal ¶ 1, ECF No. 1.)  PNC removed the case to this Court on January 1, 2020 based on diversity of citizenship.  (Notice of Removal, ECF No. 1.)   On January 8, 2020, PNC filed the presently pending Motion to Dismiss (ECF No. 8) and Motion to Transfer Venue (ECF No. 9).

## STANDARD OF REVIEW

### I.   Motion to Transfer

Where, as here, an action is removed from state to federal court, the defendant waives the right to challenge the venue of the forum as "improper" under Federal Rule of Civil Procedure 12(b)(3), but the defendant may still move under 28 U.S.C. § 1404(a) for a transfer to a different forum.  *See Am. Ins. Marketing Corp. v. 5 Star Life Ins. Co.*, 958 F. Supp. 2d 609, 613 & n.5 (D. Md. 2013).  Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  Notably, § 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at

the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

The movant bears the burden of showing that transfer to another venue is proper. *See Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004). A district court has great discretion in determining whether to transfer a case under § 1404(a), and the decision is made according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998); *Capitol Payment Systems, Inc. v. Di Donato*, No. ELH-16-882, 2017 WL 2242678, at *8 (D. Md. May 23, 2017). However, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984).

**II.    Motion to Dismiss**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### I. Motion to Transfer

Defendant petitions this Court to transfer venue to the United States District Court for the Western District of Pennsylvania. (ECF No. 9.) In support, Defendant argues that venue is not appropriate in this district because there is a written contract governing the relationship between Versus Evil and PNC containing a forum selection clause that provides: "any action, suit or proceeding resulting from, arising out of or related to this Agreement shall be instituted in any state or federal court in the Commonwealth of Pennsylvania (including the

courts of the United States of America for the Western District of Pennsylvania)…." (PNC Treasury Management Services Comprehensive Agreement at 20, ECF No. 9-2.)[2]

Where an agreement between the parties includes a valid forum selection clause, "the court must consider the convenience of the contractual forum, the fairness of a transfer in light of the forum-selection clause, and the parties' relative bargaining power." *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 857 (D. Md. 2009) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). While not dispositive of the issue, a forum selection clause will nevertheless "be a significant factor that figures centrally in the district court's calculus." *Id.* As this Court has previously held, "the following case-specific factors are essential to the analysis of a § 1404(a) motion in a case involving a valid forum-selection clause: '(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (2) convenience of the parties, and (4) the interest of justice.'" *TECH USA, Inc.*, 592 F. Supp. 2d at 857 (citing *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002)).

The analysis under § 1404(a) "presupposes a contractually valid forum-selection clause." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 62 n.5 (2013). Accordingly, a court must also determine whether the forum-selection clause is "contractually valid." *Sears Contract, Inc. v. Sauer Inc.*, 378 F. Supp. 3d 435, 440 (E.D.N.C. 2019) (quoting *Atl. Marine Const. Co., Inc.*, 571 U.S. at 62 n.5). In Maryland, "[i]f an agreement omits

---

[2] The Court may properly consider "any document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 648 (D. Md. 2015) (quoting *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009)). The Court will consider the 2013 PNC Treasury Management Services Comprehensive Agreement, attached as an exhibit to Defendant's Motion to Dismiss, because Plaintiff has explicitly referenced this agreement in its Complaint: "Plaintiff is a customer of PNC pursuant to, among other things, a 2013 Treasury Management Services Agreement…." (*See* Compl. ¶ 8, ECF No. 2.)

an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable." *Faddis Concrete, Inc. v. Brawner Builders, Inc.*, No. CV ELH-15-3975, 2017 WL 4098739, at *5 (D. Md. Sept. 15, 2017) (citing *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002)).

PNC has not established the validity of the forum-selection clause in this case. The PNC Treasury Management Services Comprehensive Agreement attached to its Motion is undated, unsigned, and incomplete. (*See* PNC Treasury Management Services Comprehensive Agreement at 20, ECF No. 9-2.) Defendant attempts to cure these deficiencies by attaching to its Reply signature cards signed by Mr. Escalante, which Defendant alleges establish that Plaintiff agreed to be bound by the terms and conditions of the PNC Treasury Management Services Comprehensive Agreement. (*See* ECF No. 19-2 (SEALED).) One of the signature cards provides, "[b]y signing below, you acknowledge receipt of…the Treasury Management Services Comprehensive Agreement and all documents related to the services selected by the Company ('Service Agreement') and agree that the Service Agreement shall be legally binding on the Company." (*Id.* at 4.) This statement does not establish that Plaintiff agreed to be bound by the forum-selection clause contained in the Treasury Management Services Comprehensive Agreement, only that Plaintiff may have received that document.

The documents supplied by Defendant PNC do not establish that a representative of Versus Evil signed and agreed to the forum-selection clause contained in the PNC Treasury Management Services Comprehensive Agreement. Indeed, Judge Blake of this Court recently found similar documentation was insufficient to establish the validity of a forum-selection clause. *See Ripley v. Long Distance Relocation Servs., LLC*, Civil No. CCB-19-0373, 2019 WL

5538343 (D. Md. Oct. 25, 2019). In *Ripley*, Judge Blake found that defendants had not adequately shown that plaintiffs agreed to the forum-selection clause at issue because "only the signed *addendum* is attached and there is no evidence that the [plaintiffs] ever received or assented to the bill of lading [containing the forum-selection clause]." *Id.* at * 4. The "addendum" signed by plaintiff in *Ripley* is akin to the signature card provided by Defendant in this case, which does not establish that Plaintiff ever assented to the forum-selection clause in the PNC Treasury Management Services Comprehensive Agreement.

Even if Defendant could establish the validity of the forum-selection clause in this case, the Court finds that transfer would not be appropriate under § 1404(a). A defendant will prevail on a motion to transfer venue under § 1404(a) if it demonstrates "by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009) (citations omitted). "In order to satisfy this burden, the defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship" to be suffered in the plaintiff's chosen forum. *Id.* "Mere assertions of inconvenience or hardship, without more, are insufficient to sustain" such a motion. *Id.* Ultimately, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984).

In this case, the only factor in favor of transferring the action to the United States District Court for the Western District of Pennsylvania is the forum-selection clause contained in the PNC Treasury Management Services Comprehensive Agreement. While the forum

selection clause is a central factor in the transfer analysis, Defendant must also satisfy its burden of establishing by a preponderance of the evidence that venue in the Western District of Pennsylvania would be better and more convenient. However, Defendant has not submitted any affidavits from witnesses and the parties involved to that effect. Moreover, Versus Evil is an entity organized under the laws of Maryland and is headquartered in Baltimore County and its manager, Mr. Escalante, resides in Baltimore County. Additionally, Defendant PNC is registered to do business in Maryland and has bank branch locations in Baltimore County. Accordingly, Defendant has not met its burden to show "that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *See Costar Realty Info.*, 604 F. Supp. 2d at 770. As such, Defendant's Motion to Transfer Venue (ECF No. 9) is DENIED.

## II.  Motion to Dismiss

Defendant seeks dismissal of both of Plaintiff's claims, asserting that Plaintiff has failed to properly plead a claim under Section 3-404 of the UCC and that Plaintiff cannot plead a claim for common-law negligence when the UCC provides a remedy.

### A. Action under UCC § 3-404 (Count I)

Versus Evil alleges that Defendant PNC failed to exercise ordinary care under UCC § 3-404 when it honored the allegedly forged checks. Section 3-404 provides a cause of action against a party who fails to exercise ordinary care in paying or taking a check. *See* Md. Code Ann., Com. Law § 3-404(d). The statute "addresses three factual situations":

> Subsection (a) addresses those situations in which "an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the

> payee." Md. Code Ann., Com. Law I § 3-404(a). Subsection (b)(i) applies where the "person whose intent determines to whom an instrument is payable (§ 3-110(a) or (b)) does not intend the person identified as the payee to have any interest in the instrument." Subsection b(ii) relates to instances where the "person identified as payee of an instrument is a fictitious person."

*Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F. Supp. 2d 339, 347 (D. Md. 2003). Defendant maintains that this statute applies only in situations involving an "impostor" or a "fictitious payee," neither of which Defendant asserts Plaintiff has alleged.

Contrary to Defendant's assertion, however, Plaintiff's allegations fit squarely within Section 3-404. Plaintiff asserts that "an unknown person or persons created a fake check drawn on" Plaintiff's checking account, allowing that person to fraudulently withdraw more than $100,000. (Compl. ¶¶ 12-17, ECF No. 2.) None of the alleged forged checks were authorized by Plaintiff and none of the payees are known to Plaintiff or its manager, Mr. Escalante. (*Id.* ¶ 18.) In addition, Plaintiff alleges that none of the payees provided any goods or services to Plaintiff, and none were owed money by Plaintiff. (*Id.* ¶ 19.)

This Court has previously noted that "Comment 2 to § 3-404 states that Subsection (b) 'covers cases in which an instrument is payable to a fictitious or nonexisting person *and to cases in which the payee is a real person but the drawer or maker does not intend the payee to have any interest in the instrument.*'" *Nat'l Union Fire Ins. Co.*, 282 F. Supp. 2d at 348 n.7 (emphasis added). The latter situation is contemplated by UCC § 3-404 in the following illustration:

> Thief, who is not an employee or agent of Corporation, steals check forms of Corporation. John Doe is president of Corporation and is authorized to sign checks on behalf of Corporation as drawer. Thief draws a check in the name of Corporation as drawer by forging the signature of Doe. Thief makes the check payable to the order of Supplier Co. with the intention of stealing it. Whether Supplier Co. is a fictitious or real person, Thief becomes the holder of the check and the person entitled to enforce it.

Md. Code Ann., Com. Law § 3-404, cmt. 2.

Versus Evil has adequately alleged this very situation, specifically that an unknown person was a payee whom Plaintiff never intended to have any interest in the instruments in question. Plaintiff need not specifically allege that the unknown person or persons were impostors or fictitious, as Defendant suggests. Indeed, at this early stage in the litigation, it is entirely reasonable that Plaintiff does not know such details. Accordingly, Plaintiff has sufficiently stated a claim under Section 3-404 of the Commercial Law Article of the Maryland Annotated Code of Maryland.

### B. Common-law negligence (Count II)

Versus Evil also alleges that Defendant PNC, by virtue of its contractual and legal obligations to Plaintiff, failed to exercise ordinary care in paying the forged checks, an action which allegedly constituted negligence under common law. Plaintiff's common-law negligence claim cannot stand, as Plaintiff has an adequate remedy at law under the UCC.

This Court has found that common-law negligence claims can proceed only in the absence of an adequate remedy under the UCC. *Advance Dental Care, Inc. v. SunTrust Bank, N.A.*, 816 F. Supp. 2d 268, 270-71 (D. Md. 2011) (citing *Equitable Life Assurance Society of the U.S. v. Okey*, 812 F.2d 906, 909 (4th Cir. 1987) ("[W]hen the Code and the common law both provide a means of recovery, the Code should displace the common law….")); *see also Silver v. Wells Fargo Bank, N.A.*, Civil Action No. MJG-16-382, 2017 WL 3621235 (D. Md. Aug. 23, 2017) (finding that UCC displaced common law claim for breach of implied contract). As explained above, Plaintiff has sufficiently stated a claim for relief under the UCC. Accordingly,

the UCC governs the dispute in this case and Plaintiff's claim for common-law negligence (Count II) must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Transfer Venue (ECF No. 9) is DENIED, and Defendant's Motion to Dismiss (ECF No. 8) is GRANTED IN PART and DENIED IN PART.  Specifically, Defendant's Motion to Dismiss (ECF No. 8) is DENIED with respect to Count I, but GRANTED as to Count II, which is DISMISSED.

A separate Order follows.

Dated: May 4, 2020

                                                                                          /s/
                                                          Richard D. Bennett
                                                          United States District Judge